## Bethel Plumbing & Heating Co. v. General State Authority

*Edward E. Knauss, 3rd,* for plaintiff.

*Michael A. Madar,* Assistant Counsel General State Authority, for defendant.

HERMAN, J., September 16, 1963.—In this equity suit the parties have prepared no pleadings, but, in lieu thereof, have filed a paper entitled: "Case Stated," in which they agreed upon all of the facts and asked this court to render a special verdict. At the time of the argument before the court en banc the parties stipulated that one member of the court, acting as chancellor, might make findings of fact and conclusions of law, and enter a decree nisi.

The controversy arose when Bethel Plumbing and Heating Co. (hereinafter referred to as "Bethel"), submitted a bid to The General State Authority (hereinafter referred to as "The Authority"), for the plumbing construction in a new men's dormitory at Indiana

State College, Indiana, Pa., and then, having discovered a gross error in its bid, notified The Authority that it could not accept a contract for the work and asked to be released from its proposal and to have its bid bond returned. American Casualty Company of Reading, Pa., was the surety on the $4,000 bid bond accompanying the bid.

*Findings of Fact*

1. In accordance with The General State Authority Act approved March 31, 1949, P. L. 372, as amended, 71 PS §1707.1, public bids were requested for the plumbing construction in a new men's dormitory, Indiana State College, Indiana, Pa., in conformity with the plans and specifications, all as prepared by Hunter, Heiges and Gross, registered architects and engineers, requiring the examination of the site of the work, and the other contract documents, including instructions to bidders, proposal form, agreement, contract bond, general conditions, and special requirements.

2. Public bids for the construction of the above project were received by The General State Authority, opened and read publicly on August 29, 1962, at 12 p.m., (EST).

3. On or before August 29, 1962, Bethel Plumbing and Heating Co., submitted its sealed bid in the amount of $13,873 and bid bond in the amount of $4,000 guaranteed by American Casualty Company of Reading, Pa. as the surety.

4. The bid of Bethel Plumbing and Heating Co. of $13,873 was the low bid, which bid was substantially under the second low bid of $79,376.

5. The General State Authority, acting through its authorized agents and employes, upon opening and reading the bid of Bethel Plumbing and Heating Co., immediately recognized, because of the great disparity in the bids, that an error must have been made in the amount of their bid as submitted.

6. The General State Authority was notified of a $100,000 error in the bid submitted by Bethel Plumbing and Heating Company, by a telegram dated August 29, 1962, and received the same day at 4:28 p.m., after the opening and reading of the bids, and by letter dated August 30, 1962.

7. The Bethel Plumbing and Heating Co., by its officers and agents, erred in the amount of the bid which was submitted as $13,873 and which should have been $113,873, the first digit having been left out.

8. Bethel Plumbing and Heating Co., on September 24, 1962, advised The General State Authority that due to the obvious clerical error in typing the bid Bethel Plumbing and Heating Co. could not, and would not, accept a contract for $13,873.

9. Whereupon The General State Authority awarded the contract aforesaid to the second low bidder, in the amount of $79,376.

10. There is no evidence of any fraud or collusion on the part of Bethel Plumbing and Heating Co.

### Discussion

On the facts agreed to by the parties and found by the chancellor, this case is clearly distinguishable from the cases of Colella v. Allegheny County, 391 Pa. 103 (1958), and Hedden v. Northampton Area Joint School Authority, 396 Pa. 328 (1959). In neither of those cases does it appear that the parties to whom the bids were made knew or had reason to know of a mistake in the low bid. And, as the chancellor reads those cases, the discrepancy in the amount bid and the amount intended, and consequently the discrepancy between the low bid and the next lowest bid, was not such as to put the party receiving the bid on notice of an error.[1] That

---

[1] In Colella the low bid was $144,900; the amount intended was $194,900 and the next lowest bid was $218,995. In Hedden the low bid was $913,000; the amount intended was $1,003.000 and the next lowest bid was $995,595.

is not true in the instant case. Here the discrepancy between the low bid, $13,873, and the amount intended, $113,873, is $100,000. Here the error was over 700 percent of the bid. In Colella it was but 33 percent, and in Hedden but 9 percent. Translating this to the difference between the low erroneous bid and the second lowest [2] in each case, we find that in the instant case the difference is more than 82 percent; in Colella it is approximately 33 percent; and in Hedden 8 percent.

One is immediately struck by the obviousness of the error in the instant case. No reasonable person could even glance at the tabulation of bids[3] without at once recognizing that there must be a mistake in the Bethel bid, and, indeed, The Authority admits that it did, upon opening and reading the bid, immediately recognize that an error must have been made. This, then, distinguishes this case from the Colella case, supra, where Mr. Justice Bell, now the Chief Justice, speaking for the court said, page 106:

"The Chancellor found, and we believe correctly, that the *mistake was unilateral and was the result of negligence* on the part of Colella. The Chancellor further found, and we believe correctly, that when the sealed bids were opened the County of Allegheny was not aware, nor did it have any knowledge of any clerical mistake in Colella's bid. . . ." and then states the question of whether or not Colella was entitled to with-

---

[2] The second lowest bid in the instant case was $79,376.

[3] "Bethel Plumbing & Heating Co. ...............$ 13,873.00
Edw. W. Livingston & Sons, Inc. .............$ 79,376.00
Windber Plumbing Co., Inc. .................$ 85,736.00
Coleman-Good, Inc. .........................$ 88,888.00
McCarls Plumbing & Heating Co. ............$ 92,222.00
Ivor J. Lee, Inc. ...........................$ 95,333.00
C. P. Wright & Co. ..........................$ 99,800.00
John Haney ................................$112,700.00"

draw its bid and have its bond cancelled, and concludes that it was not so entitled.

In the instant case other rules of contract law are applicable, however, since The Authority knew of the mistake and so admitted in the "Case Stated." While generally a party to an executory contract such as arises in the submission of a bid for construction work will not be relieved from his bargain because of a unilateral mistake in his bid, the rule is contra where the party receiving the bid knows or has reason to know because of the amount of the bid, or otherwise, that the bidder has made a mistake. In the latter situation the contract is voidable at the suit of the bidder. See Saligman v. United States, 56 F. Supp. 505; Kemp v. United States, 38 F. Supp. 568, Restatement of Contracts, §503; 5 Williston on Contracts, §1598.

In 5 Williston on Contracts, §1578, the learned author states:

"The expressions are numerous that mistake, in order to justify relief, must be mutual or the error of one party must be known to the other. That this is true of reformation is nowhere doubted; but some cases afford countenance for the doctrine that unilateral mistake, while the contract is still executory and the parties can be put *in statu quo*, may afford ground for rescission, and doubtless the discretionary remedy of specific performance may be denied. *Rescission has been most frequently sought where a price was bid which because of erroneous arithmetical processes or by the omision of items was based on a mistake. Relief has been allowed in several cases of this and other kinds, though denied in others. In some of them, at least, it would seem that the party not in error should have suspected the existence of a mistake, in which case clearly rescission and restitution should be allowed. . . ."* (Italics supplied.)

The chancellor agrees with counsel for The Authority that "Public Bid Policy enunciated by the [Supreme] Court in the Colella Case, must have strict adherence," and in the case of Modany Bros. v. State Public School Building Authority, 79 Dauph. 243 (1962), the equitable relief sought by the bidder was refused on the basis of the Colella case. But, here the facts are entirely different and plaintiffs' bid bond may be returned without seriously undermining and making the requirement or system of sealed bids a mockery, or of opening the door to fraud and collusion. The parties have here stipulated not only the mistake and its knowledge by The Authority, but also that there is no evidence of fraud or collusion.

While the chancellor has found no case in Pennsylvania directly in point and none has been called to his attention by counsel, it is concluded that the proper rules to be here applied are those set forth in Williston on Contracts, the Restatement, and the Federal cases cited.

*Conclusions of Law*

1. Equity has jurisdiction.

2. The parties are properly before the court.

3. Plaintiff Bethel Plumbing and Heating Co., made a gross clerical error in the amount of its bid proposal which was submitted to The General State Authority for plumbing construction in a new men's dormitory at Indiana State College, Indiana, Pa., on Contract No. G.S.A. 407-16.3.

4. When the bids were opened and read The General State Authority knew that such error had been made.

5. There was no fraud or collusion between the parties to this suit.

6. This case is distinguishable from Colella v. Allegheny County, 391 Pa. 103 (1958), and from Hedden v. Northampton Area Joint School Authority, 396 Pa. 328 (1959), and is not controlled by them.

7. The bid bond should be returned to plaintiffs, and judgment should, therefore, be entered in their favor.

### Decree Nisi

And now, September 16, 1963, it is ordered, adjudged and decreed that defendant, The General State Authority, return to plaintiffs, Bethel Plumbing and Heating Co., and American Casualty Company of Reading, the bid bond in the amount of $4,000 which had been submitted with the bid of Bethel Plumbing and Heating Co., for the plumbing construction in a new men's dormitory at Indiana State College, Indiana, Pa., on or about August 29, 1962.

The prothonotary is directed to enter this decree and to notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed within 20 days after the entry of this decree, the prothonotary, upon praecipe, shall enter judgment for plaintiffs and against defendant.

